## George Whitney *vs.* Robert B. Eaton & others.

Where it is part of a contract for the sale of goods that they are to be paid for in the nego-tiable note of the purchaser, such payment is a condition precedent to the sale, and the title to the goods will not vest in the purchaser by a delivery to him of the goods, with-out such payment, or waiver of the condition by the vendor.

An offer for the purchase of ten chests of indigo at a certain sum per pound, payable in the negotiable note of the purchaser at six months, was made on Tuesday through a broker, and accepted by the vendor, who on Thursday notified his acceptance to the vendee, and delivered the indigo to the purchaser. The memorandum of sale, made by the broker in his book, contained no mention of the note; nor did the entries of the transaction in the books of either party. It was understood that the purchaser was to compute the tare of the indigo at his store to ascertain the net weight. On the Friday and Saturday following the vendor called at the purchaser's store, inquired whether the tare had been fixed, and was told that it had not. On Saturday the purchaser suspended payment. On the Monday following the vendor learned this, and demanded from the purchaser a return of the indigo, and on the following Wednesday replevied it. The vendor never sent any bill of sale to the purchaser, nor demanded a note from him, and the purchasers never tendered any note to the vendor. *Held,* that the vendor was not concluded by the entry in the broker's books, but might prove by any compe-tent evidence, oral or in writing, that payment by note was part of the contract. *Held, also,* that the sale was conditional on such payment; that the vendor had not waived the performance of the condition; and that the title to the goods had not vested in the purchaser.

Replevin of ten chests of indigo, sold while in bond at the custom-house, by the plaintiff to the defendants through a broker, at ninety cents per pound on a credit of six months, and delivered under circumstances detailed in a statement of facts, upon which the case was submitted to the superior court, and on appeal, to this court, and which appears in the opinion.

*O. G. Peabody,* for the plaintiff.

*H. C. Hutchins,* for the defendants.

SHAW, C. J.　The question is, whether the property vested in the vendees before they became insolvent.　The assignees, who now claim for the general creditors, do not stand in the position of purchasers without notice, who have paid a full consideration for the goods, but they took only such title as the insolvents themselves could have asserted had they been actors.　*Hill* v. *Freeman*, 3 Cush. 257.　*Tyler* v. *Freeman*, 3 Cush. 261.　But if the sale was conditional, if the condition had not been complied with nor waived, a *bona fide* purchaser could not hold.　*Coggill* v. *Hartford & New Haven Railroad*, 3 Gray, 545.

The case is submitted to the court on an agreement of facts, with liberty to draw all such inferences as the facts will warrant. It is stated explicitly, in the agreed statement of facts, that the defendants, through their broker, agreed to pay for the indigo in their negotiable note at six months.　But it is argued on the part of the defendants, that the giving of a negotiable note at six months by the purchasers was not a part of the contract. The only ground on which this argument is placed is, that in the memorandum entered by the broker of the defendants in his book, stating the fact of the sale, the giving of their own note by the defendants is not mentioned as part of the contract.　But as here was no attempt to enforce an executory agreement for a sale of goods, either by the vendor to require an acceptance of goods sold, or by the vendee to require a delivery of them, the fact of a memorandum in writing to bind the bargain under the statute of frauds is not in question.　After a delivery in fact, pursuant to some contract of sale, the only question is, whether by the terms of such contract such delivery of itself vested the property in the vendee, and this might be proved by any competent evidence bearing upon the terms of sale.　And such conclusion is quite consistent with the provision in the last paragraph of the agreed statement of facts, that if any facts therein contained would be incompetent as evidence in a jury trial, the same shall be considered as stricken out, and neither party prejudiced thereby.　It was competent therefore to prove such fact by the testimony of the broker, by correspondence or otherwise; and therefore it was competent for the parties to agree to it.

But further, under the authority given to the court, by which they are not only authorized, but bound, to draw such inferences of fact as a juiy would and ought to draw, we are strongly in-clined to believe, that when merchandise is sold at wholesale on a long credit, the understanding is so general that it is to be paid for by note or bill of exchange, that a jury would be war-ranted to infer from the circumstances that such was the intent and meaning of the stipulation in this case. A negotiable se-curity is more beneficial to the vendor than a sale on account.; it gives him conclusive proof of his debt, and is more avail-able for use by enabling him to raise money on it. If any ne-gotiable contract was to be given for the merchandise, nothing could be more simple and less onerous to the vendees than their own promissory note to the vendor ; and it is most favorable tc the defendants to presume that their own note was intended. If such were the terms of sale, then it was a conditional sale and delivery ; payment by note was a condition precedent, and until compliance with it the property did not pass. Cases above cited. *Blanchard* v. *Child,* 7 Gray, 155. *Burbank* v. *Crooker,* 7 Gray, 158.

That here was no waiver, and no intention that the sale should be deemed absolute without payment by note, as in the case of *Riddle* v. *Varnum,* 20 Pick. 280, will appear, we think, by an examination of the facts. For this purpose dates may be material. It appears that the 14th of September was Monday, therefore the sale on the 8th was on the Tuesday previous. But it was made by the defendants' broker, and was not made known to them until Thursday the 10th, and then by the plain-tiff. On that day he paid the duties and warehouse charges, and gave the defendants an order, by which the goods were de-livered to their truckman and carried to their store. It is agreed that the computation of the tare for the purpose of this sale was to be done there under the defendants' direction. The plaintiff called on two different days, between that and the time of the defendants' stopping payment, to inquire if the tare was fixed, and was told it was not; these calls must have been on the 11th and 12th, Friday and Saturday ; and on Saturday the de-

fendants stopped payment, though this was not known to the plaintiff till Monday the 14th, and he thereupon demanded back the indigo. It is stated as a fact, that the boxes were "tared" on the 11th, and so entered on the defendants' books; if it was so, a false answer was given to the plaintiff. It further appears that no notice of this act was given to the plaintiff till after the failure of the defendants, and after the commencement of this suit. This conduct rebuts the presumption that the plaintiff intended to sell without a note, or had waived that condition.

Had this been a sale of these cases of indigo on a credit of six months on book account, without note, we are not prepared to say that the act of "taring" was an act which remained to be done, so as to suspend the vesting of the property, because, as it was to be ascertained solely to determine the number of net pounds to be paid for, it might have been done after the goods had been definitively delivered, but before the time of payment, with equal benefit to both parties. But if the contract was to pay by promissory note, then the giving of the note must necessarily precede the vesting of the property by the sale, and of course the "taring" of the goods was necessary to determine the true price of the goods, and fix the amount of the whole purchase money. Some other circumstances lead to the same result. No bill of sale was made out by the plaintiff and sent to the defendants, no entry as of goods sold was made in the books of the plaintiff, no intimation given by the defendants to the plaintiff that the goods were sold on book account and that "taring" was not necessary to complete the sale.

On the whole case, the court are of opinion, that the sale of indigo was inchoate, incomplete, conditional, on a condition precedent not performed, so that the property had not vested in the vendees when they became insolvent; that the right of possession followed the right of property at the time of demand, and of the commencement of this suit in replevin.

*Judgment for the plaintiff.*